UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:04-CV-1170-J-20MCR Consolidated

CONTINENTAL CASUALTY COMPANY, *et al.*,

       Plaintiffs,

   v.

CITY OF JACKSONVILLE, *et al.*,

       Defendants.

_____

THE TRAVELERS INDEMNITY COMPANY,

       Plaintiff,

   v.

CITY OF JACKSONVILLE, *et al.*,

       Defendants.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL SUMMARY JUDGMENT BY PLAINTIFFS
CONTINENTAL CASUALTY COMPANY, TRANSPORTATION
INSURANCE COMPANY, AND THE TRAVELERS INDEMNITY COMPANY**

**TABLE OF CONTENTS**

**Page**

PROCEDURAL BACKGROUND AND INTRODUCTION.................................................1

FACTUAL BACKGROUND.................................................................................................3

      A.     The Insurers Agree to Provide Independent Counsel to Defend the City
            Entities. ....................................................................................................................3

      B.     The City Entities Unilaterally Settle the Williams Litigation Over the
            Insurers' Objection.................................................................................................4

      C.     The Transportation and Travelers Policies Contain Cooperation and
            Voluntary Payment Conditions.............................................................................9

ARGUMENT.....................................................................................................................11

I.      The Summary Judgment Standard .........................................................................11

II.    The City Entities Forfeited Any Claim to Coverage When They Breached the
      Cooperation and Voluntary Payment Conditions of the Insurance Policies By
      Settling Without the Insurers' Consent...................................................................12

      A.     Under Florida Law, an Insured Who Accepts a Defense Subject to a
            Reservation of Rights and Settles Without the Insurers' Consent
            Violates the Policies' Cooperation and Voluntary Payment Conditions
            and Relinquishes Any Claim To Coverage............................................................12

      B.     The City Entities Accepted the Defense Provided by the Insurers and
            Settled the Williams Litigation Without the Insurers' Consent......................16

CONCLUSION..................................................................................................................18

## TABLE OF AUTHORITIES

### FEDERAL CASES

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)............................................................................11

Gerling Global Reinsurance Corp. of America v. Gallagher,
    267 F.3d 1228 (11th Cir. 2001) ....................................................11

Philadelphia Indemnity Insurance Co. v. Kohne,
    294 F. Supp. 2d 1319 (M.D. Fla. 2003)...............................14, 15

Travelers Indemnity Co. v. Royal Oak Enterprises, Inc.,
    344 F. Supp. 2d 1358 (M.D. Fla. 2004)..............................15, 17

United National Insurance Co. v. Jacobs,
    754 F. Supp. 865 (M.D. Fla. 1990)...................................13, 14,
                                                15, 18

### STATE CASES

American Reliance Insurance Co. v. Perez,
    712 So. 2d 1211 (Fla. 3rd DCA 1998)................................15, 16

First American Title Insurance Co. v. National Union Fire Insurance Co.,
    695 So. 2d 475 (Fla. 3rd DCA 1997)...........................................15

Giffen Roofing Co. v. DHS Developers, Inc.,
    442 So. 2d 396 (Fla. 5th DCA 1983).........................................14

Nationwide Mutual Fire Insurance Co. v. Beville,
    825 So. 2d 999 (Fla. 4th DCA 2002).........................................15

Taylor v. Safeco Insurance Co.,
    361 So. 2d 743 (Fla. 1st DCA 1978) ...................................12, 14

Zurich American Insurance Co. v. Cutrale Citrus Juices USA, Inc.,
    No. 5:00-CV-149-OC- 10GRJ, 2002 WL. 1433728 (M.D. Fla. Feb. 11,
    2002) ..............................................................................................18

## DOCKETED CASES

Nora Williams, et al. v. City of Jacksonville, et al.,
    Case No. 16-2003-CA-003263 (Duval Cty., Fla.).....................................................1, 2,
                                           4, 6,
                                           7, 8,
                                           11

## FEDERAL STATUTES

Fed. R. Civ. P. 56 ...............................................................................................................1

Fed. R. Civ. P. 57 ...............................................................................................................1

Pursuant to Federal Rules of Civil Procedure 56 and 57 and M.D. Fla. Loc. R. 3.01, Plaintiffs Continental Casualty Company and Transportation Insurance Company (jointly, "Transportation") and The Travelers Indemnity Company ("Travelers") (collectively, the "Insurers") hereby move this Court to enter final summary judgment in favor of the Insurers and against the City of Jacksonville, the Duval County School Board and the Jacksonville Electric Authority (the "City Entities").[1] The grounds for this motion are that the City Entities accepted the multi-million dollar defense provided by the Insurers subject to a reservation of rights for eighteen months, but then settled the claims against them (the "Settlement") in <u>Nora Williams, et al. v. City of Jacksonville, et al.</u>, Case No. 16-2003-CA-003263 (Duval Cty., Fla.) (the "<u>Williams</u> Litigation"), without the consent and over the explicit objection of the Insurers. The City Entities' settlement of the <u>Williams</u> Litigation under these circumstances constitutes a violation of the cooperation and voluntary payment provisions in the insurance policies at issue, which vitiates any claim to insurance coverage for the Settlement as a matter of Florida law.

## PROCEDURAL BACKGROUND AND INTRODUCTION

In November 2004, Transportation and Travelers filed separate declaratory judgment actions in this Court seeking determination of their respective coverage obligations to the City Entities in connection with the <u>Williams</u> Litigation. The declaratory judgment actions, now consolidated before this Court, raise a variety of coverage issues. This motion for final

---

[1] In the action commenced by Transportation, all three of the City Entities are defendants and filed a counterclaim against Transportation. In the action commenced by Travelers, two of the City Entities are defendants and filed a counterclaim against Travelers. Thus, Travelers seeks summary judgment against the only two City Entities with which it has a dispute: City of Jacksonville and the Jacksonville Electric Authority.

summary judgment addresses just one: whether the City Entities breached the cooperation and voluntary payment provisions of the insurance policies at issue when they admittedly settled the <u>Williams</u> Litigation without the consent and over the express objection of the Insurers who were funding their defense.  If resolved in favor of the Insurers, this motion would end this case.[2]

For the reasons set forth below, the Court should consider and grant this motion now. From the time the Insurers were notified of the <u>Williams</u> Litigation, they shared the substantial cost of defending the City Entities – subject to a reservation of rights, as permitted by Florida law – paying counsel of the City Entities' choice approximately $3.9 million in attorneys' fees and other expenses over an eighteen-month period.  Although the City Entities willingly accepted the defense provided by the Insurers, on August 11, 2005, the City Entities entered into the Settlement with the <u>Williams</u> Litigation plaintiffs without the consent of the Insurers, and with full knowledge of the Insurers' express objection to the Settlement.  Pursuant to the terms of the Settlement, the City Entities agreed to pay $25 million to the participating <u>Williams</u> Litigation plaintiffs and further agreed to a $75 million consent judgment against the City Entities, together with an assignment of the City Entities' rights against the Insurers.

These are the only facts necessary to the disposition of this motion and they are not in dispute:  the Insurers provided a defense through independent counsel to the City Entities subject to a reservation of rights; the City Entities accepted the defense provided; and the

---

[2]  On August 11, 2005, Transportation filed its Motion For Partial Summary Judgment Seeking a Declaration That Emotional Distress Claims Are Not Covered. (Docket Entry ("D.E.") 68).  That motion would not need to be decided if the Court grants the instant motion.

328365 v 2

City Entities settled with the <u>Williams</u> Litigation plaintiffs without the consent of the Insurers and with full knowledge of their objection. As a matter of clear Florida law, the City Entities breached the cooperation and voluntary payment provisions of the insurance policies at issue and relinquished any claim to coverage for the Settlement by settling without the Insurers' consent under these circumstances. The Court should therefore enter final summary judgment in favor of the Insurers and against the City Entities.[3]

## FACTUAL BACKGROUND[4]

### A.      The Insurers Agree to Provide Independent Counsel to Defend the City Entities.

The original complaint in the <u>Williams</u> Litigation was filed on or about May 5, 2003 and was subsequently amended. <u>See</u> Ex. 1. After defending the <u>Williams</u> Litigation on their own for nearly ten months, the City Entities finally provided Transportation and Travelers with notice of the lawsuit on or about March 2, 2004, and requested that the Insurers provide the City Entities a defense. <u>See</u> Ex. 2. Transportation and Travelers each responded with a request for further information while fully reserving their respective rights under the insurance policies at issue.[5]

---

[3] Transportation's Motion for Leave to Amend and to Supplement Complaint ("Motion to Amend") is now pending. The Motion to Amend seeks to amend Transportation's Complaint to add specific allegations relating to the City Entities' recent Settlement (D.E. 81). The Motion to Amend also seeks to add as parties the participating <u>Williams</u> Litigation plaintiffs and the other insurers (including Travelers) from whom the City Entities have sought coverage. Travelers has consented to the Motion to Amend. <u>See</u> Plaintiffs' Amended Motion for Leave to Amend and Supplement Complaint, filed by Transportation on Oct. 4, 2005 (D.E.. 88).

[4] This Factual Background is provided for context and solely for the Court's convenience. The Insurers have filed with this Motion a Separate Statement of Undisputed Material Facts identifying the few undisputed facts necessary to this Motion.

[5] By letter dated March 9, 2004, Travelers fully reserved its rights and requested information with which to make a coverage determination. <u>See</u> Ex. 3. On May 4, 2004, Travelers agreed to defend the City and JEA in the <u>Williams</u> Litigation, subject to a reservation of rights, and consented in advance to their choice of counsel.

3

The City Entities requested that Steel Hector & Davis represent them in the Williams Litigation, see Ex. 9; and the Insurers consented to the City Entities' selection of counsel, notwithstanding the substantial expense associated with retaining the Steel Hector firm. See Ex. 10; Ex. 4. The Insurers further agreed to share the cost of the defense beginning with the date of first notice (March 2, 2004), and the City Entities accepted the defense provided by the Insurers. To date, the Insurers together have paid approximately $3.9 million in attorneys' fees and other expenses in the City Entities' defense. See Ex. 11, 12.

### B.   The City Entities Unilaterally Settle the Williams Litigation Over the Insurers' Objection.

On or about March 14, 2005, the Williams Litigation plaintiffs "confirm[ed] in writing" a proposal to settle the Williams Litigation that outlined two alternatives:  (1) the City Entities could settle for $75 million with the participation and consent of the Insurers, or (2) the City Entities could settle for $25 million without the participation and consent of the Insurers, provided they agreed to a $75 million consent judgment and assigned their rights against the Insurers to the Williams Litigation plaintiffs. See Ex. 13 (Mar. 15, 2005 letter from H. Lumpkin, attaching Mar. 14 settlement proposal). The first alternative remained open for a period of only 30 days, but the second was open-ended, in a patent attempt to pressure the Insurers into settling without regard to the reasonableness of the $75 million settlement demand. Id.

---

See Ex. 4. After the City Entities' counsel requested a response from Transportation by April 30, 2004, Transportation also issued an initial reservation of rights on April 29, 2004 and noted its difficulty in locating any policies issued to the City Entities. See Ex. 5. After the City Entities provided Transportation with copies of portions of two Transportation policies on May 6, 2004, see Ex. 6, on May 18, 2004, Transportation confirmed that it, too, would defend the Williams Litigation under "a complete reservation of rights." See Ex. 7. Transportation further supplemented its reservation of rights on October 6, 2004. See Ex. 8.

4

At the time of the March 14 settlement proposal, the factual and legal record to support the substantial settlement amount demanded by the <u>Williams</u> Litigation plaintiffs was extremely limited. The Insurers therefore made multiple requests to the City Entities for additional information. <u>See</u>, <u>e.g.</u>, Ex. 14, 15, 16, 17.[6] When the information requested by the Insurers was not forthcoming, the Insurers advised that they lacked the information needed to evaluate the March 14 settlement proposal, and that they therefore did not consent, but rather objected, to the City Entities' settlement of the <u>Williams</u> Litigation under either of the alternatives offered by the <u>Williams</u> Litigation plaintiffs. <u>See</u>, <u>e.g.</u>, Ex. 17, 18. The City Entities did not settle the <u>Williams</u> Litigation at that time; the <u>Williams</u> Litigation continued; and the Insurers continued to defend the City Entities.

Although the City Entities also continued to accept the defense provided by the Insurers, at some point unknown to the Insurers, the City Entities renewed their settlement discussions with the <u>Williams</u> Litigation plaintiffs.[7] Thus, on July 22, 2005, counsel for the City Entities advised Transportation that the City Entities were once again engaged in settlement discussions with the <u>Williams</u> Litigation plaintiffs and were considering a settlement of the <u>Williams</u> Litigation on financial terms similar to the second alternative set forth in the plaintiffs' March 14 settlement proposal. <u>See</u> Ex. 20. In response,

---

[6] Concomitant with this motion, the Insurers are filing a motion for leave to file Exhibits 14, 19, 23, 26, and 27 under seal.

[7] Since at least May 2005, Transportation engaged in a series of efforts with the City Entities to formulate a settlement strategy for the <u>Williams</u> Litigation on behalf of the City Entities. Transportation's efforts continued through the summer of 2005. <u>See</u> Ex. 19 (correspondence of May 11, 2005, May 17, 2005, June 3, 2005, June 9, 2005, June 13, 2005, June 20, 2005, June 29, 2005, July 1, 2005, July 6, 2005, July 14, 2005 and e-mail of June 20, 2005). During this time, the City Entities did not advise Transportation that settlement discussions with the <u>Williams</u> Litigation plaintiffs had resumed.

Transportation reminded the City Entities that it had consistently requested that the City

Entities keep it advised of any settlement discussions, which plainly had not occurred, given

the advanced state of the City Entities' discussions with the <u>Williams</u> Litigation plaintiffs.

<u>Id.</u> Transportation also reiterated that it did not consent, but in fact objected, to any

settlement on or close to the terms set forth in the March 14 settlement proposal. <u>Id.</u> After

Travelers learned of the ongoing settlement discussions from Transportation (having never

been informed directly by the City Entities), it also made its objection to the proposed

settlement known to the City Entities. <u>See</u> Ex. 21.

　　　　Despite the Insurers' stated opposition to the proposed settlement, counsel for the

City Entities informed the Insurers that the City Entities intended to proceed in an effort to

consummate the proposed settlement. The City Entities promised, however, that "if

conversations with Plaintiffs mature to the point where [the Insurers] might have an

opportunity to participate in a global resolution we will let you know." <u>See</u> Ex. 22.

Notwithstanding this promise, the City Entities advised on Wednesday, August 3, 2005, that

they had "determined conditionally to accept a proposal, quite similar to the proposal made

by Plaintiffs in March 2005, to settle all claims." <u>See</u> Ex. 23. Attached to the August 3 letter

was an August 2, 2005 letter from Robert Shields, counsel for the <u>Williams</u> Litigation

plaintiffs, together with a 12-page settlement agreement, which had plainly been the subject

of extensive negotiations without the Insurers' knowledge. The August 2 letter "insist[ed]

that the draft [settlement agreement] be signed on or before ... August 5, 2005." <u>Id.</u> The

City Entities offered the Insurers "a brief opportunity ... [to] negotiate a settlement ...

comprising different terms and amounts"; otherwise, the City Entities would "proceed to consummate the settlement as outlined." Id.

Notably, throughout the course of the Williams Litigation and the City Entities' settlement discussions with the plaintiffs, the Insurers continued to defend the City Entities subject to their respective reservations of rights, and the City Entities continued to accept that defense. The August 3 letter recognized this fact but stated that: "[s]hould the City act to consummate the settlement, it will simultaneously decline to accept any further defense tendered under the reservation of rights, having elected to limit its exposure by other means, and the defense team will presumably stop work at that point." Id. (emphasis added). On August 4, 2005, Transportation outlined significant procedural concerns, objected to the impossibly short time-frame for response imposed by the parties to the Williams Litigation, and asked "to meet with [counsel for the City Entities] and/or claimants' counsel to discuss the case." See Ex. 24. Counsel for the City Entities obtained two brief extensions of the Williams Litigation plaintiffs' deadlines, through August 10, 2005, to permit the Insurers to respond to the proposed settlement.

At all times, however, the City Entities made clear that the key financial terms of the Settlement – the $75 million consent judgment and the $25 million payment by the City Entities – had remained unchanged since the March 14 proposal and were not negotiable. See Ex. 25 (Aug. 6, 2005 e-mail from B. Ver Ploeg (stating that City Entities had "conditionally decided to proceed with the offer in hand")); Ex. 26 (August 10, 2005 letters from the insurers confirming August 8, 2005, conversation with the City Entities in which the City Entities stated that the financial terms of the settlement "would not change.")); Ex. 27

After considering the proposed settlement to the extent possible in the short time-frame permitted, the Insurers on August 10, 2005 again advised the City Entities that they did not consent but instead objected to the proposed settlement. The Insurers noted that the advanced – indeed, all but completed – settlement discussions with the Williams Litigation plaintiffs, conducted without the participation or consent of the Insurers, had made it effectively impossible for the Insurers to "negotiate a settlement . . . comprising different terms and amounts" as suggested by Mr. Ver Ploeg in his August 3 letter. See Ex. 26, Ex. 27. The Insurers set forth in detail their concerns relating to the Settlement and the manner in which it was achieved and reiterated that they did not consent to the proposed settlement. Id.

Later that day, the City Entities advised the Insurers that the "City has determined that it is in its best interest to conditionally accept the [Williams Litigation] Plaintiffs' offer." See Ex. 28 (Aug. 10, 2005 letter from C. Laquidara). Appended to the August 10 letter was a 12-page Agreement to Recommend Settlement Terms, a 7-page Covenant Not to Execute or Sue and Waiver, a letter to the Mayor recommending the Settlement, a draft Ordinance approving the Settlement, as well as copies of recent evaluations prepared by the City's counsel. The lengthy attachments plainly evidenced the substantial time and effort the City Entities had put into negotiating and documenting the Settlement of which they had apprised the Insurers only days before. Id. (without counsel evaluations). Having concluded their settlement negotiations with the Williams Litigation plaintiffs, the City Entities also purported to "conditionally reject" the defense they had willingly accepted for eighteen months. The Settlement was formally executed the next day. See Ex. 29. The City Entities'

8

conduct is particularly troubling here. The City Entities worked together with the <u>Williams</u> Litigation plaintiffs to craft a settlement behind the Insurers' backs even as they continued to accept the Insurers' defense. The Settlement the parties structured is on its face unreasonable and prejudicial to the Insurers. Collusion and reasonableness are not relevant to this Motion, but, if the Court denies this Motion, the Insurers fully intend to raise these defenses.

On September 19, 2005, Transportation once again advised the City Entities that it did not consent to the Settlement and that if the City Entities determined to go forward and the state court approved the Settlement with respect to the claims of minors, the City Entities would be in violation of the terms of their insurance policies. <u>See</u> Ex. 30. The state court approved the Settlement with respect to the claims of the minors on September 28, 2005 – the last act necessary to make the Settlement effective. By letter dated September 29, 2005, Travelers informed the City Entities that the Settlement was a breach of the cooperation and voluntary payment conditions in the Travelers policies, and that Travelers had no responsibility to fund the Settlement. <u>See</u> Ex. 31.

### C.   The Transportation and Travelers Policies Contain Cooperation and Voluntary Payment Conditions.

The Transportation and Travelers Policies each contain cooperation and voluntary payment conditions to coverage. The 1966-68 Policy issued by Transportation provides:

> The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at its own cost, voluntarily make any payment, assume any obligation or incur an expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

9

1966-68 Policy, Condition 12, attached hereto as Exhibit 32. A similar provision is contained in the 1972-74 Transportation Policy. See 1972-74 Policy, Condition 4 attached hereto as Exhibit 33.

The 1974-77 Travelers Primary Policy also contains cooperation and voluntary payment conditions to coverage. The 1974-77 Travelers Primary Policy states:

> The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

1974-77 Travelers Primary Policy, attached hereto as Exhibit 34, Condition 4. The 1974-1977 Travelers Umbrella Policy similarly requires that the insured cooperate in all matters connected with the defense and settlement of a suit. See 1974-77 Travelers Umbrella Policy, attached hereto as Exhibit 35.

In addition, both Transportation Policies have a provision which states:

> No action shall lie against the company unless as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Ex. 32, Condition 13; Ex. 33, Condition 5.

10

The Travelers Primary Policy also contains a condition which states:

> No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after the actual trial or by written agreement of the *insured*, the claimant and the company.

See Ex. 34, Condition 5.

## ARGUMENT

### I.   THE SUMMARY JUDGMENT STANDARD

"A party seeking to recover upon a claim . . . may, at any time after the expiration of 20 days from the commencement of the action . . . move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P., 56(a).  The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Id. at Rule 56(c).

A plaintiff is entitled to summary judgment where, as here, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gerling Global Reinsurance Corp. of America v. Gallagher, 267 F.3d 1228, 1293 (11th Cir. 2001).

328365 v 2

**II.    THE CITY ENTITIES FORFEITED ANY CLAIM TO COVERAGE WHEN THEY BREACHED THE COOPERATION AND VOLUNTARY PAYMENT CONDITIONS OF THE INSURANCE POLICIES BY SETTLING WITHOUT THE INSURERS' CONSENT.**

**A.    Under Florida Law, An Insured Who Accepts A Defense Subject To A Reservation Of Rights And Settles Without The Insurers' Consent Violates The Policies' Cooperation And Voluntary Payment Conditions and Relinquishes Any Claim to Coverage.**

Florida law provides a clear, rational system that governs a situation faced time and again by insurers and policyholders:  a policyholder is sued, and the insurer agrees to defend subject to a reservation of rights.  Taylor v. Safeco Ins. Co., 361 So. 2d 743 (Fla. 1st DCA 1978).  As will be demonstrated below, both the insurer and the insured are provided with well-defined choices:  If an insurer informs the insured that it will provide a defense pursuant to a reservation of rights, the insured may choose to accept that defense or reject it.  If the insured decides to reject the defense, it is free to settle or otherwise resolve the claim without seeking or needing the consent of the insurer.  Thereafter, if a court determines that the insurer's policy covered the claim, then the insurer may not refuse to pay the claim on the ground that the insured violated the cooperation or voluntary payment conditions in the policy.  But if the insured decides to accept the defense, it may not settle the claim without the insurer's consent.  If the insured nonetheless settles without the insurer's consent, this act is a breach of the cooperation and voluntary payment conditions in the policy, and the insurer is relieved of any obligation to fund the settlement.

The contractual rights and obligations of the insurer and the insured arise from the language of the policies.  Here, the City Entities have identified two Transportation policies (the 1966-68 Policy and the 1972-74 Policy) and two Travelers policies (a primary policy

12

and an umbrella policy each in force during the 1974-77 time period). All of the Policies expressly require the City Entities to "cooperate with the company" particularly with respect to "effecting settlements." See Ex. 32 (1966-68 Policy, Condition 12), Ex. 33 (1972-74 Policy, Condition 4(c)), Ex. 34 (Travelers Primary Policy at Condition 4(c)). The Policies also provide that the City Entities may "not voluntarily make any payments." See Ex. 32 (1966-68 Policy, Condition 12), Ex. 33 (1972-74 Policy, Condition 4(c)), Ex. 34 (Travelers Primary Policy at Condition 4(c)). Finally, all of the Policies provide that "[n]o action shall lie against the company unless as a condition precedent thereto, the insured shall have fully complied with all the terms of [the] policy" nor until the insured's obligation to pay is determined by judgment or "by written agreement of the insured, the claimant and the company." See Ex. 32 (1966-68 Policy, Condition 13), Ex. 33 (1972-74 Policy, Condition 5), Ex. 34 (Travelers Primary Policy at Condition 5).

Florida courts have consistently applied similar policy language to hold that where an insurer provides a defense subject to a reservation of rights, and the insured accepts the defense, the insured breaches both the cooperation and voluntary payment conditions of the policy if it settles without the insurer's consent. United National Ins. Co. v. Jacobs, 754 F. Supp. 865, 870-71 (M.D. Fla. 1990). When this occurs, the insurer is not required to pay for the settlement. In Jacobs, the insurer (UNIC) defended its insured (Jacobs) subject to a reservation of its "right to contest its liability under the policy at a later date." Id. at 870. Jacobs settled the underlying litigation with the plaintiffs (the Perrys) without UNIC's consent. The court concluded:

> Because Jacobs accepted the defense, he gave UNIC exclusive
> control of the litigation. By neither rejecting the defense nor

13

>acquiring UNIC's consent, Jacobs breached the terms of the
>policy when he settled the lawsuit with the Perrys.

Id.

In so holding, the court in <u>Jacobs</u> expressly rejected the policyholder's argument that,

because the insurer had only agreed to defend Jacobs subject to a reservation of rights, the

insured was free to settle without the insurer's consent. <u>Id.</u> at 870-71. It is well settled that

an insurer may provide a defense to its insured while reserving the right to later challenge

coverage. <u>See</u> <u>Giffen Roofing Co. v. DHS Developers, Inc.</u>, 442 So. 2d 396, 396-97 (Fla. 5th

DCA 1983). Once the insured accepts a defense subject to a reservation of rights it cannot

settle without the insurer's consent. <u>Jacobs,</u> 754 F. Supp. at 870. In contrast, where the

insurer and the insured do not "agree upon a conditional defense, the putative insured [may]

choose[ ] to control the litigation and to effect a reasonable settlement," without the insurer's

consent. <u>Taylor</u>, 361 So. 2d at 746. Because the insured in <u>Jacobs</u> (unlike in <u>Taylor</u>)

accepted the insurer's defense subject to a reservation of rights, he could not settle without

the insurer's consent and his failure to obtain the insurer's consent was a violation of the

cooperation and voluntary payment provisions of the policy that relieved UNIC of any

obligation to pay for the settlement.

This Court reached a similar conclusion more recently in <u>Philadelphia Indemnity</u>

<u>Insurance Co. v. Kohne</u>, 294 F. Supp. 2d 1319 (M.D. Fla. 2003). In <u>Kohne</u>, the insurer was

not notified of the underlying lawsuit until after entry of final judgment. Although the

insurer initially had <u>denied</u> coverage of the claim, it had not declined to defend because the

insured never provided notice of the suit. The court still held that the insured could not settle

without the insurer's consent, and the insured's failure to obtain such consent was an

"unexcused breach of the ... cooperation clause ... [and] relieved [Philadelphia] of its duties" under the policy. Id. at 1325-26. The court held that before an insured may settle without the insurer's consent, the insurer must both deny the claim and refuse to defend. Neither of the City Entities' Insurers did either here.

Florida courts repeatedly have held that where an insurer properly defends its insured pursuant to a reservation of rights, the insurer does not breach its duty to defend, and the insured's duty to cooperate precludes the insured from settling without the insurer's consent.[8] As the Third District Court of Appeal stated in First American Title Ins. Co. v. National Union Fire Ins. Co., 695 So. 2d 475, 477 (Fla. 3rd DCA 1997), and reaffirmed in American Reliance Ins. Co. v. Perez, 712 So. 2d 1211, 1212 (Fla. 3rd DCA 1998):

> [W]hile an insured is free to enter into a reasonable settlement when its insurer has wrongfully refused to provide it with a defense to a suit, we find that the insured is not similarly free to independently engage in such settlements where, as here, the insurer had not declined a defense to suit.

The consequence of violating the cooperation and voluntary payment provisions by settling without the insurer's consent is equally clear. The "failure to comply with the relevant policy provisions relieve[s] the insurer of its obligations under the policy." First American, 695 So. 2d at 477; accord Jacobs, 754 F. Supp. at 871 ("In acting contrary to the provisions of the policy, Jacobs relinquished coverage and relieved UNIC of its liability on

---

[8] The only Florida state case to the contrary is Nationwide Mutual Fire Ins. Co. v. Beville, 825 So. 2d 999 (Fla. 4th DCA 2002) (holding that "a carrier's unilateral defense under a reservation of rights is similar to a refusal to provide any defense at all ... [because] the carrier has violated its duties under the policy"). As this Court noted in Travelers Indemnity Co. v. Royal Oak Enterprises, Inc., 344 F. Supp. 2d 1358 (M.D. Fla. 2004), however, "Beville deviates from the trend in Florida law" and "is not controlling." Id. at 1370. The authorities on which the Insurers rely in this motion do represent "the trend in Florida law," which this Court should follow.

the insurance claim."); Perez, 712 So. 2d at 1213 (cooperation and voluntary payment conditions "require[] the insured to obtain the insurer's consent before settling").

**B.     The City Entities Accepted The Defense Provided By The Insurers And Settled The <u>Williams</u> Litigation Without The Insurers' Consent.**

Here, the undisputed facts demonstrate that the Insurers acted in accordance with Florida law and the City Entities did not. The Insurers agreed to the City Entities' choice of counsel and provided the City Entities with a complete defense, subject to a reservation of rights, precisely as permitted and provided by Florida law. The City Entities, in turn, accepted the defense provided by the Insurers, also as permitted and provided by Florida law. But then the City Entities did something that Florida law does not permit: they entered into the Settlement with the <u>Williams</u> Litigation plaintiffs without the consent and over the express objection of the Insurers.

These facts – all of which are undisputed – are the only facts material to the resolution of this motion. As set forth above, where an insured accepts a defense subject to a reservation of rights, it is not free to settle without its insurer's consent. If the insured settles nonetheless, it relinquishes coverage for the settlement; it is that simple, and it is precisely what the City Entities did here.

It is readily apparent from the record that the City Entities knew their actions violated the cooperation and voluntary payment terms of the insurance policies and Florida law. In a patent effort to avoid the clear dictates of Florida law, the City Entities stated that they would "<u>simultaneously</u> decline to accept any further defense" upon consummating the Settlement. Then, the City Entities did not even do that, instead only purporting to "conditionally reject"

16

the Insurers' defense on the eve of the Settlement's formal execution. See pp. 8-9 supra;
Separate Statement of Undisputed Facts ¶ 16, 19. But the course chosen by the City Entities
is not one recognized or allowed by Florida law. An insured cannot, as the City Entities have
attempted to do, accept payment of millions of dollars in defense costs, settle without its
insurer's participation or consent, and then demand payment after a "simultaneous
conditional rejection" of the defense it had heretofore willingly accepted. Florida law is clear
that the insurer and the insured must each make choices. Here, the City Entities made their
choice when they accepted the Insurers' defense (and millions of dollars in defense expenses)
subject to a reservation of rights. It is meaningless for an insured to reject a defense,
conditionally or otherwise, at the time a case has settled. At that point, there is nothing left to
defend. To allow an insured to proceed in such a fashion would make a mockery of the duty
to cooperate that underpins Florida insurance law. See Royal Oak, 344 F. Supp. 2d at 1374
(recognizing the importance of the insured's duty to cooperate with its insurers).

Moreover, here, the City Entities' "conditional rejection" was not a rejection at all.
By purporting to make the rejection "conditional," the City Entities sought to hedge their
bets. The "condition" of the rejection of the Insurers' defense was the ultimate efficacy of
the Settlement. If the Settlement did not ultimately become effective, the City Entities would
have returned to the Insurers and insisted that they continue to provide a complete defense to
the Williams Litigation. Thus, the City Entities' so-called "conditional rejection" was a
transparent attempt to suspend for a short period of time their acceptance of a complete
defense to permit them to settle the Williams Litigation in a way they hoped would

circumvent Florida law. This Court should reject such a cynical approach to Florida's treatment of settlements in the context of a defense under a reservation of rights.

Unlike Taylor, this is not a case in which circumstances changed after an initial acceptance of a defense, and the insured determined that it had to defend itself and therefore rejected a further defense, and months or years later decided to settle the action. The record here is clear: the City Entities accepted millions of dollars in attorneys' fees and expenses from the Insurers to pay the counsel the City Entities selected right up until the day they conditionally settled with the Williams Litigation plaintiffs with full knowledge that the Insurers opposed the terms of the deal. Having accepted the Insurers' defense until the end, the City Entities were not free to settle without the Insurers' written agreement or consent. Having settled with the Williams Litigation plaintiffs nonetheless, they have necessarily "relinquished coverage and relieved [the Insurers] of . . . liability." Jacobs, 754 F. Supp. at 871.[9] Based on the facts in this case, Florida law is clear: there is no insurance coverage for the Settlement between the City Entities and the Williams Litigation plaintiffs.

## CONCLUSION

In the Williams Litigation, the Insurers provided a defense to the City Entities subject to a reservation of rights, from the date the City Entities' belatedly provided notice of the lawsuit right up until they purported to "conditionally reject" the defense while

---

[9] The City Entities may seek to rely on Zurich American Insurance Co. v. Cutrale Citrus Juices USA, Inc., No. 5:00-CV-149-OC-10GRJ, 2002 WL 1433728 (M.D. Fla. Feb. 11, 2002), an unpublished opinion. See Ex. 36. In Cutrale, the court rejected the insurer's contention that the insured could not settle without the insurer's consent where the insurer had not refused to defend. Cutrale is directly contrary to this Court's published decisions in Jacobs and Kohne and, the Insurers submit, wrongly decided. Cutrale does not even cite Jacobs, and it distinguishes Perez and First American on grounds on which those cases were not decided (i.e., lack of notice and collusion). The Court should decline to follow Cutrale, and instead follow the better-reasoned decisions in Jacobs and Kohne, which accurately reflect "the trend in Florida law."

328365 v 2

"simultaneously" settling with the plaintiffs.  Under these circumstances, Florida law is clear: settlement of the <u>Williams</u> Litigation without the Insurers' consent breached the cooperation and voluntary payment conditions of the Policies.  As a result, the Insurers have no obligation to fund the settlement.  Summary judgment therefore should be entered in favor of the Insurers and against the City Entities on all claims and counterclaims by the Insurers in the consolidated actions.

November 4, 2005

Respectfully submitted,

_____/s/_____

ROSS, DIXON & BELL, LLP
Richard J. Pratt, admitted *pro hac vice*
Gabriela Richeimer, admitted *pro hac vice*
Meredith Werner, admitted *pro hac vice*
2001 K Street, N.W.
Washington, D.C. 20006-1040
(202) 662-2000
*Attorney for Plaintiffs*
*Transportation Insurance Company*
*Continental Casualty Company*

ROSS, DIXON & BELL, LLP

Rebecca L. Ross, admitted *pro hac vice*
55 W. Monroe St.
Suite 3000
Chicago, IL  60603-5111
(312) 759-1920

328365 v 2

HINSHAW & CULBERTSON LLP

Ronald L. Kammer, Florida Bar No. 360589
P.O. Box 569009
Suite 1600
Miami, Florida 33256-9009
(305) 358-7747
Fax: (305) 577-1063

HOGAN & HARTSON, LLP

Laura Besvinick, Florida Bar No. 391158
Mellon Financial Center
1111 Brickell Avenue, Suite 1900
Miami, FL 33131
(305) 459-6500

_____/s/_____

LILES GAVIN COSTANTINO & MURPHY
Rutledge R. Liles, Florida Bar No. 102805
R. Kyle Gavin, Florida Bar No. 747076
225 Water Street, Suite 1500
Jacksonville, FL 32202
(904) 634-1100

*Attorneys for Plaintiffs*
*The Travelers Indemnity Company*

Of Counsel

STEPTOE & JOHNSON LLP

James E. Rocap, III, admitted *pro hac vice*
Virginia L. White-Mahaffey, admitted *pro hac vice*
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-6297

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2005, the foregoing Motion For Summary Judgment was filed electronically.  Notice of this filing will be sent to the below parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

R. Hugh Lumpkin, Esq.
Brenton N. Ver Ploeg, Esq.
VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street, Suite 2150
Miami, FL  33131

Cindy L. Laquidara, Esq.
CITY OF JACKSONVILLE
OFFICE OF GENERAL COUNSEL
117 W. Duval Street, Suite 480
Jacksonville, FL  32202

Stephen C. Asher, Esq.
COHN BAUGHMAN & MARTIN
333 West Wacker Drive, Suite 900
Chicago, IL  60606

B. Thomas Whitefield, Esq.
MORFORD & WHITEFIELD, P.A.
404 Woodcock Drive, Suite 202
Jacksonville, FL  32207

I hereby certify that on this 4th day of November, 2005, I caused to be served a copy of the foregoing Motion for Final Summary Judgment by first-class mail, postage prepaid, on the following persons:

Robert E. Shields, Esq.
Doffermyre, Shields, Canfield, Knowles & Devine
Suite 1600, 1355 Peachtree Street
Atlanta, GA  30309

                              /s/ _____
                              Meredith Werner
                              ROSS, DIXON & BELL, LLP
                              2001 K Street NW
                              Washington, D.C.  20006

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:04-CV-1170-J-20MCR Consolidated

CONTINENTAL CASUALTY COMPANY, *et al.*,

      Plaintiffs,

   v.

CITY OF JACKSONVILLE, *et al.*,

      Defendants.

_____

THE TRAVELERS INDEMNITY COMPANY,

      Plaintiff,

   v.

CITY OF JACKSONVILLE, *et al.*,

      Defendants.

_____/

**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY PLAINTIFFS
CONTINENTAL CASUALTY COMPANY, TRANSPORTATION INSURANCE
COMPANY, AND THE TRAVELERS INDEMNITY COMPANY**

Pursuant to Fed. R. Civ. P. 56, and M.D. Fla. Loc. R. 3.01, Plaintiffs Continental

Casualty Company and Transportation Insurance Company (jointly, "Transportation") and

The Travelers Indemnity Company ("Travelers") (collectively, "Insurers"), hereby file this

statement of undisputed material facts in support of their motion for summary judgment.

1.     The underlying <u>Williams</u> Litigation was filed on May 13, 2003 and was subsequently amended. Ex. 1. On March 2, 2004, the City Entities' Michael Wedner sent notice of the <u>Williams</u> Litigation to the Insurers. <u>See</u> Ex. 2.

2.     On March 9, 2004, Travelers fully reserved its rights and requested information with which to make a coverage determination. <u>See</u> Ex. 3.

3.     On March 22, 2004, the City of Jacksonville and JEA acknowledged Travelers March 9, 2004 letter and provided it with portions of the primary and the umbrella insurance policy issued by Travelers to the City of Jacksonville and JEA for 1974-77. <u>See</u> Ex. 37.

4.     On April 29, May 18, and October 6, 2004, Transportation reserved its rights with respect to the <u>Williams</u> Litigation. <u>See</u> Ex. 5; Ex. 7; Ex. 8. The April 29, 2004 letter noted that Transportation could not locate any applicable policies.

5.     On May 4, 2004, Travelers agreed to defend the City of Jacksonville and JEA in the <u>Williams</u> Litigation, subject to its reservation of rights, and consented in advance to their choice of counsel. <u>See</u> Ex. 4.

6.     On May 6, 2004, the City Entities provided copies of portions of two policies to Transportation: the 1966-68 Policy and the 1972-74 Policy. <u>See</u> Ex. 6.

7.     On May 6, 2004, the City Entities acknowledged Travelers agreement to defend the City of Jacksonville and JEA under a reservation of rights. <u>See</u> Ex. 38.

8.     On or about May 17, 2004, the City Entities retained the law firm of Steel Hector & Davis to represent them. <u>See</u> Ex. 9.

9.     On May 18, 2004, Transportation accepted tender of the defense, subject to a full reservation of rights as permitted and provided by Florida law. See Ex. 7.

10.     On June 10, 2004, Travelers provided the City of Jacksonville with certified copies of the primary and umbrella insurance policy issued to the City of Jacksonville and JEA. See Ex. 39.

11.     On June 23, 2004, Transportation agreed to the retention of Steel, Hector & Davis as counsel for the City Entities, as requested by the City Entities. See Ex. 10.

12.     The Insurers paid the defense costs of the City Entities' counsel, Steel, Hector & Davis from the date they were retained. The Insurers have paid approximately $3.9 million to date in defense of the City Entities. See Ex. 11, 12.

13.     On or about March 14, 2005, the Williams Litigation plaintiffs proposed a settlement involving a consent judgment to the City Entities. See Ex. 13. The City Entities did not settle at that time.

14.     Subsequently, the Insurers continued to request information from the City Entities. See Ex. 17, 18.

15.     On July 22, 2005, counsel for the City Entities reported that the City Entities were once again negotiating a settlement of the Williams Litigation on financial terms similar to the consent judgment alternative proposed several months earlier. See Ex. 20. In response, Transportation reminded the City Entities that it did not consent – but, in fact, objected – to any settlement on or close to the terms of the earlier proposal. Id. After learning of the City Entities' settlement discussions from Transportation, Travelers also made its objections to the proposed settlement known to the City Entities. See Ex. 21.

16.     On August 3, 2005, counsel for the City Entities advised Transportation and Travelers that they had "determined conditionally to accept a proposal, quite similar to the proposal made by Plaintiffs in March 2005, to settle all claims" and that should the City Entities "act to consummate the settlement [they] will simultaneously decline to accept any further defense tendered . . ." See Ex. 23. Attached to the letter from the City Entities' counsel was an August 2, 2005 letter from Robert Shields, counsel for the Williams Litigation plaintiffs, together with a 12-page settlement agreement. Shields' letter "insist[ed] that the draft [settlement agreement] be signed on or before ... August 5, 2005." Id. The letter from counsel for the City defendants offered the Insurers "a brief opportunity. . . [to] negotiate a settlement . . . comprising different terms and amounts;" otherwise, the City defendants would "proceed to consummate the settlement as outlined." Id.

17.     On August 4, 2005, Transportation outlined procedural concerns and "objected to the short time frame to consider the proposed settlement." See Ex. 24.

18.     On August 10, 2005, Transportation and Travelers once again each advised the City Entities that it did not consent to the proposed settlement. See Ex. 26; Ex. 27.

19.     Later that day, the City defendants advised the Insurers that the "City has determined that it is in its best interest to conditionally accept the [Williams] Plaintiffs' offer." See Ex. 28. The City Entities also purported to "conditionally reject" the defense that they had accepted from the Insurers for the previous eighteen months. Id. Appended to the August 10 letter was a 12-page Agreement to Recommend Settlement Terms, a 7-page Covenant Not to Execute or Sue and Waiver, a letter to the Mayor recommending the

4

Settlement, a draft Ordinance approving the Settlement, as well as copies of the recent evaluations prepared by counsel for the City Entities.

20.     On August 24, 2005, the City Entities provided the Insurers with copies of the executed settlement documentation.  See Ex. 40.  On September 1, 2005, the City Counsel approved the Settlement.  See Ex. 41 (Ordinance 2005-998-E, dated September 1, 2005).

21.     The Williams Litigation Court approved of the Settlement on September 28, 2005 in a fairness hearing with respect to minor plaintiffs.

22.     On September 29, 2005, Travelers informed the City Entities that the Settlement was a breach of the voluntary payment and cooperation provisions of the Travelers policies and that Travelers had no responsibility to fund the Settlement.  See Ex. 31.

23.     As of October 31, 2005, Transportation had paid at least $1.9 million in fees and expenses incurred in the defense of the City Entities in the Williams Litigation.  See Ex. 11.

24.     As of October 31, 2005, Travelers had paid or approved for payment $2,039,749 in fees and expenses incurred in the defense of the City Entities in the Williams Litigation.  See Ex. 12.

25.     In pertinent part, the 1966-68 Transportation Policy provides:

> The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits.  The insured shall not, except at its own cost, voluntarily make any payment, assume any obligation or incur an expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

5

See Ex. 32.

26.     The 1972-74 Transportation Policy similarly provides:

The insured shall cooperate with the company and, upon the
company's request, assist in making settlements, in the conduct
of suits and in enforcing any right of contribution or indemnity
against any person or organization who may be liable to the
insured because of bodily injury or property damage with
respect to which insurance is afforded under this policy; and
the Insured shall attend hearings and trials and assist in
securing and giving evidence and obtaining the attendance of
witnesses.  The insured shall not, except at his own cost,
voluntarily make any payment, assume any obligation or incur
any expense other than for first aid to others at the time of
accident.

See Ex. 33.

27.     Similarly, the 1974-77 Travelers Primary Policy also provides:

The *insured* shall cooperate with the company and, upon the
company's request, assist in making settlements, in the conduct
of suits and in enforcing any right of contribution or indemnity
against any person or organization who may be liable to the
*insured* because of injury or damage with respect to which
insurance is afforded under this policy; and the *insured* shall
attend hearings and trials and assist in securing and giving
evidence and obtaining the attendance of witnesses.  The
*insured* shall not, except at his own cost, voluntarily make any
payment, assume any obligation or incur any expense other
than for first aid to others at the time of accident.

See Ex. 34.

28.     The 1966-68 Transportation Policy further provides:

No action shall lie against the company unless as a condition
precedent thereto, the insured shall have fully complied with all
the terms of this policy, nor until the amount of the insured's
obligation to pay shall have been finally determined either by
judgment against the insured after actual trial or by written
agreement of the insured, the claimant and the company.

See Ex. 32.

    29.    Similarly, the 1972-74 Transportation Policy also provides:

> No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the Insured after the actual trial or by written agreement of the insured, the claimant and the company.

See Ex. 33.

    30.    The 1974-77 Travelers Primary Policy similarly provides:

> No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after the actual trial or by written agreement of the *insured*, the claimant and the company.

See Ex. 34.

    31.    The 1974-77 Travelers Umbrella Policy provides:

> The Travelers shall not be called upon to assume charge of or participate in the settlement or defense of any claim made or suit brought against the Insured with respect to which there is applicable underlying insurance.
>
> The Travelers shall have the right and shall be afforded the opportunity to associate with the Insured in the defense and control of any claim or suit alleging injury or damage which appears reasonably likely to involve the Travelers in the payment of damages, in which event the Insured and the Travelers shall cooperate in all matters connected with the defense of such claim or suit.

See Ex. 35.

7